# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TRACY PYATT** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | **NO. 14-1726** |
| v. | : | |
| | : | |
| **CAROLYN W. COLVIN, Acting** | : | |
| **Commissioner of Social Security** | : | |
| *Defendant* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                        AUGUST 10, 2015

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court are a *Report and Recommendation* submitted by United States Magistrate Judge Linda K. Caracappa, [ECF 15], the Objections thereto filed by Tracy Pyatt ("Plaintiff"), [ECF 16], the response to the Objections filed by Carolyn W. Colvin, Acting Commissioner of Social Security ("Defendant"), [ECF 17], and the administrative record. [ECF 6]. For the reasons stated herein, Plaintiff's Objections are overruled, the Report and Recommendation is approved and adopted in whole, and Plaintiff's *request for review* is denied.

### BACKGROUND

On December 16, 2009, Plaintiff, who was born on January 8, 1970, filed applications for *Disability Insurance Benefits* and *Social Security Income* with the Social Security Administration ("SSA") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§401-434, and §§1381-1383f, respectively, alleging that he became disabled on January 1, 2002, due to a right shoulder injury, which included a rotator cuff tear and shoulder bursitis; residuals of a right ankle burn; cervical spine degenerative disease; chronic and severe headaches characterized as migraines; chondrocalcinosis of the left knee; and psychological disorders, including depression and

anxiety. Plaintiff claimed that he also suffered from sympathetically mediate pain syndrome in his right shoulder. (Tr. 140, 161, 457-462, 558-60, 562, 591, 657, 668, 670, 687, 847, 978, 983, 1023, and 1049). Plaintiff, educated up to the seventh grade, had worked as a laborer, shipper and welder. (Tr. 344, 328). On March 24, 2010, the SSA denied the applications. (Tr. 161-65). Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") pursuant to 20 CFR §404.929 *et seq.* A hearing was held on April 28, 2011, and on May 9, 2011, after applying the five-step sequential evaluation process to determine disability,[1] ALJ Suanne Strauss issued a partially favorable decision, finding that Plaintiff was disabled and his onset date of disability as December 16, 2009. (Tr. 136-55). Plaintiff filed a timely request for review to the Appeals Council. (Tr. 9-10).

On June 21, 2012, the Appeals Council granted a review and after concluding that the ALJ had not adequately explained her rationale for the decision, remanded the case. (Tr. 156, 158). ALJ Strauss held a *de novo* hearing and, on December 3, 2012, issued a decision finding Plaintiff disabled but with an onset date of disability of September 23, 2011. (Tr. 15-29). Plaintiff again appealed to the Appeals Council. On January 27, 2014, the Appeals Council

---

[1] At step one, the ALJ considers the claimant's work activity, if any. If engaged in substantial gainful activity, the ALJ will find that the petitioner is not disabled. At step two, the ALJ considers the medical severity of the claimant's impairment(s). If the claimant does not have a severe, medically determinable physical or mental impairment that meets the duration requirement §404.1509, or a combination of impairments that is severe and meets the duration requirement, the ALJ will not find the plaintiff was disabled. At step three, the ALJ must determine whether the petitioner's impairment or combination of impairments met or was medically equal to one of the listings under 20 CFR Part 404, Subpart P, Appendix One. If claimant's impairments do not meet one of the listings, the ALJ will move to step four, to assess the claimant's residual functional capacity and past relevant work experience. If the claimant can perform past relevant work, he will be found not disabled. If the claimant is unable to do any past relevant work, the ALJ moves to step five and considers the claimant's residual functional capacity, age, education, and work experiences in order to determine if he can do any other work. In order to support a finding that the claimant can do other work, the agency is responsible for presenting evidence that demonstrates that such other work exists in significant numbers in the national economy that the claimant can do. 20 CFR §§404.1520(a) and 416.920(a).

2

denied Plaintiff's request, thereby adopting the ALJ's decision as the final decision of the Commissioner of Social Security. (Tr. 1-5).

On July 17, 2014, Plaintiff sought judicial review pursuant to 42 U.S.C. §405(g), and filed a complaint in federal court against Defendant. [ECF 3]. Pursuant to the Procedural Order for Social Security Review, [ECF 5], on July 17, 2014, Plaintiff filed a *Brief and Statement of Issues in Support of Request for Review* ("Brief"), [ECF 8], and Defendant filed a Response to Plaintiff's request for review. [ECF 11]. On September 18, 2014, this matter was referred to Magistrate Judge Linda K. Carapacca pursuant to 28 U.S.C. §636(b)(1) and Federal Rule of Civil Procedure ("Rule") 72.1. On February 27, 2015, the Magistrate Judge issued a *Report and Recommendation* ("R&R") recommending that Plaintiff's *request for review* be denied. [ECF 15]. Thereafter, Plaintiff timely filed Objections to the R&R, [ECF 16], and Defendant filed a response to the Objections. [ECF 17].

## LEGAL STANDARD

When a party makes specific objection(s) to the report and recommendation, the district court must perform a *de novo* review of the issues raised by the objection(s). Fed. R. Civ. P. 72(b)(3); *Martinez v. Astrue*, 2011 WL 4974445, at *2 (E.D. Pa. 2011) (citing 28 U.S.C. §636(b)(1) (2005)). In its *de novo* review, a district court may "accept, reject, or modify, in whole or in part, the findings and recommendations" of the magistrate judge's report. *Id.* In order to qualify for *de novo* review, "an objecting party must identify specific errors in the magistrate judge's analysis without simply rehashing arguments already raised to the magistrate judge." *Id.*; *see also* Local Rule 72.1(IV)(b) (which provides that written objections "shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections."). Thus, judicial review of an administrative record is

"limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." *See* 42 U.S.C. §405(g); *Aponte v. Astrue*, 2013 WL 433578, at *2 (E.D. Pa. Feb. 5, 2013) (citing *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994)); *Martinez*, 2011 WL 4974445, at *1 (quoting *Gilmore v. Barnhart*, 356 F. Supp. 2d 509, 511 (E.D. Pa. 2005)); *see also Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984) (court noting that *de novo* review of objections is not appropriate when such review would undermine efficiency of the magistrate system); *Nghiem v. Kerestes*, 2009 WL 960046, at *1 n.1 (E.D. Pa. Apr. 3, 2009) (declining to engage in a review of duplicative objections previously dismissed by the magistrate judge).

The term "substantial evidence," as used in the Social Security Act, "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Martinez*, 2011 WL 4974445, at *1 (quoting *Pierce v. Underwood*, 487 U.S. 552, 564-65 (1988)). "It is less than a preponderance of the evidence but more than a mere scintilla." *Jesurum v. Sec'y of U.S. Dept. of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). The standard is deferential, and "a court may not '[w]eigh the evidence to substitute [its own] conclusions for those of the fact-finder.'" *Aponte*, 2013 WL 433578, at *2 (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

## DISCUSSION

In the R&R, the Magistrate Judge meticulously reviewed the ALJ's progress through the five-step sequential evaluation to determine whether Plaintiff had a disability and the onset date of disability. To summarize the analysis: at step one, the ALJ found that Plaintiff had not engaged in substantial activity since Plaintiff's alleged onset date of disability—January 1, 2002. (R&R 4). At step two, after reviewing Plaintiff's voluminous medical records, the ALJ found

4

that Plaintiff's physical and mental conditions constituted "severe" impairments within the meaning of the Social Security regulations. (*Id.* at 4-13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or were medically equal to, the listing of impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (*Id.* at 13). At step four, the ALJ found that prior to September 23, 2011, the determined onset date of Plaintiff's disability, Plaintiff had the residual functional capacity to perform light work with certain limitations. The ALJ further found that beginning on September 23, 2011, Plaintiff had residual functional capacity to perform light work except that due to an exacerbation of his headaches and mental health symptoms, he was unable to react appropriately to the public, peers and supervisors and, as such, he was unable to perform work-related activities on a normal, continuous and sustained basis. (*Id.* at 14). Finally, at step five, the ALJ found that since January 1, 2002, Plaintiff was unable to perform any past relevant work, but found that prior to September 23, 2011, jobs existed in significant number in the national economy that Plaintiff could perform. (Tr. 27-28; R&R 14). In addition, the ALJ found that as of September 23, 2011, Plaintiff became disabled and has continued to be disabled. (R&R 15).

In his request for judicial review, Plaintiff essentially argues that the ALJ erred in: (1) relying on the opinion of the state agency consultant; (2) not finding that his impairments or combinations of impairments met or were medically equal to one of the listed impairments; (3) offering no rationale for evaluating the severity of mental health impairments; (4) determining the onset date of his disability; (5) finding Plaintiff had residual functional capacity to perform work in the national economy prior to the onset date of disability; and (6) concluding the jobs specified by the vocational expert are not supported by substantial evidence.

5

Mirroring issues presented in his request for judicial review, Plaintiff's Objections to the R&R set forth that the Magistrate Judge erred in: (1) concluding that the ALJ was justified in rejecting the opinions of treating physicians and accepting the opinion of a state agency doctor "as long as the ALJ explained reasons on the record;" (2) affirming the ALJ's decision and by failing to find that the reliance on a state agency consultant's opinion was misplaced; (3) concluding that Plaintiff's impairment did not meet the listings for disability pertaining to mental health; (4) urging this Court to adopt the ALJ's decision when the ALJ substituted her own opinion for that of multiple treating physicians; (5) finding that the ALJ conducted a thorough evaluation of the record in determining the onset date of disability; (6) concluding that the residual functional capacity was correctly determined; and (7) not fully addressing Plaintiff's arguments regarding jobs accepted by the ALJ at step five of the disability evaluation process.

This Court's careful reading of Plaintiff's submissions compels the conclusion that Plaintiff's Objections "simply rehash" arguments presented in his request for review; arguments that the Magistrate Judge thoroughly addressed in her 34-page R&R. Therefore, in light of the case law cited, a *de novo* review by this Court is not warranted. However, in the interests of judicial economy and caution, this Court addresses Plaintiff's Objections.

*First, Second, Fourth Objections—Opinions of Treating Physicians and State Agency Consultants*

Plaintiff's first, second and fourth Objections, in essence, address the ALJ's assessment of medical opinions. In particular, Plaintiff argues that the Magistrate Judge erred in upholding the ALJ's reliance upon the opinions of state agency consultants, as well as for substituting her own opinion for that of Plaintiff's treating physicians. The Magistrate Judge found that the ALJ's findings were supported by substantial evidence and recommends that this claim be denied. This Court agrees.

Third Circuit law unequivocally states that "[t]he ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and [residual functional capacity] determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§404.1527(e)(1), 404.1546(c)). When evaluating a treating physician's opinion and the weight it is to be afforded, the ALJ must consider such factors as the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record evidence, and any specialization of the opining physician. 20 C.F.R. §416.927(d)(2). An ALJ should also give "treating physicians' reports great weight, 'especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (citing *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).

However, state agent opinions merit significant consideration because stage agency medical and psychological consultants are experts in the Social Security disability programs. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180 (July 2, 1996).[2,3] Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, *see, e.g.*, 20 C.F.R. §404.1527(d)(1)-(2), an ALJ "must always consider . . . medical opinions . . . together with the rest of the relevant evidence submitted, 20 C.F.R. §404.1527(b), and "must explain the weight given to these opinions in [her] decision[ ]." 20 C.F.R. §404.1527(f)(2)(ii); *Chandler*, 667 F.3d at 362; *Rutherford*, 399 F.3d at 557; *see also*

---

[2] "Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources at the [ALJ] and Appeals Council levels of administrative review." *Walker v. Astrue*, 733 F. Supp. 2d 582, 588 (E.D. Pa. 2010) (quoting SSR 96-6p).

[3] Social Security Rulings "are binding on all components of the Social Security Administration." 20 C.F.R. §402.35(b)(1).

7

*Walker v. Astrue*, 733 F. Supp. 2d 582, 588 (E.D. Pa. 2010) (quoting SSR 96-6p). Further, an ALJ has the "statutory authority to choose [which evidence] to credit" when conflicting evidence exists, as long as the ALJ provides adequate reasoning for accepting or rejecting such evidence. *Ray v. Astrue*, 649 F. Supp. 2d 391, 401 (E.D. Pa. 2009). While contradictory medical evidence is required for an ALJ to reject a treating physician's opinion outright, such an opinion may be afforded "more or less weight depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429.

In arguing that the Magistrate Judge made an unclear statement of the law (first Objection), Plaintiff focuses on one portion of the standard set forth in the R&R that the ALJ is to employ in reviewing and crediting state agency consultant opinions over those of a claimant's treating physician. This Court's careful reading of the R&R, however, leads to the conclusion that the Magistrate Judge, echoing the above standard, fully comprehended and discussed the ALJ's obligation under Social Security regulations. Thus, no error was committed.

With respect to Plaintiff's argument that the medical opinion of his treating physicians and the independent medical examinations of physicians from a workers' compensation claim were improperly rejected in favor of the report of state agency consultant, Dr. Carlos Jusino-Barrios, which was completed prior to the evidence submitted at the hearing, evidence that "would have changed the State Agency examiner's opinion" (second Objection), this argument lacks merit. Generally, state agency review of claimants precedes a hearing before an administrative law judge's review, the hearing, and decision. The Social Security regulations impose no time limit on how much time may pass between an independent expert's report and the ALJ's decision which may or may not rely on it. *Chandler*, 667 F.3d at 361. Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the

State agency medical . . . consultant's finding" is an update to the report required. *Id.* (quoting SSR 96-6p) (emphasis omitted). Here, there is no apparent justification in the record for the ALJ to have made such a conclusion. Thus, no error was committed by the ALJ.

This Court also agrees with the Magistrate Judge's finding that the ALJ properly afforded greater weight to the opinion of Dr. Jusino-Berrio, despite additional evidence received after Dr. Jusino-Berrio's opinion was issued in March 2010 (second and fourth Objections). This additional evidence included approximately 300 pages of medical evidence, which contained the opinions of Drs. Aryeh Klahr and Cheryl Wong, whose opinions, as addressed, *infra* at 16, were given little weight by the ALJ. In deciding that the additional evidence would not have changed Dr. Jusino-Berrio's conclusion that Plaintiff had no marked mental limitations, the ALJ assigned his opinion significant weight as supported by the medical record *and* the claimant's statements to his treating physicians.

Further, the ALJ made note, *inter alia*, of the following documentation of medical visits, reports, and findings in weighing the opinions of Plaintiff's treating physicians and others who rendered medical opinions:

- The Plaintiff reported difficulty using his dominant arm for activities of daily living but a June 2008 MRI of the right shoulder that purportedly documented Plaintiff's pain merely show a torn rotator cuff and bursitis of the right shoulder, which are not consistent with the alleged limitations set forth in Plaintiff's application and appeal, and they do not support disability on or before December 31, 2006, the date last insured.

- As for Plaintiff's ankle impairment, he recovered from the 1998 burn, and continued to work for several years after this injury. The ankle impairment is not mentioned in medical records until five years later in April 2003; *to wit*: office visits on September 2000, March 2001, April 2001, September 2001, April 2002, August 2002, September 2002, October 2002, November 2002, December 2002, January 2003, and February 2003 make absolutely no mention of the ankle impairment.

9

- An April 2003 evaluation note indicated that Plaintiff walked with good reciprocating gait, intact dorsiflexion, plantar flexion, inversion, and eversion; good subtalar range of motion; good toe flexion/extension; and a normal x-ray of the right ankle.

- Addressing Plaintiff's headaches, the notes of Dr. Kenneth Sun, a treating physician, in January 2004, October 2004, September through November 2006, and January through March 2007 indicate no headaches; although Dr. Sun reports that Plaintiff experienced intermittent headaches in March 2006. A May 2011 CT scan of Plaintiff's brain was normal.

- With respect to Plaintiff's mental impairment, medical records from Hackettstown Psychological Associates from August 2005 to January 2006 reveal that Plaintiff was seen for one intake appointment and only three counseling sessions; a February 2006 independent psychological evaluation revealed no evidence of looseness of associations, delusions, hallucinations, paranoia, obsessions, compulsions or phobias. Thereafter, records note only sporadic psychiatric treatment in November 2003, August 2005, and summer and fall 2008, suggesting to the ALJ that Plaintiff's purported mental concerns were not as serious as claimed.

- A June 2004 report from a psychiatric exam conducted by Dr. Joel Federbush concluded that Plaintiff had a "class 3 [severe] moderate impairment," but Dr. Federbush failed to provide any documentation or support for this conclusion.

- In March 2010 consultative examiner, Dr. Esha Khoshu, reported that Plaintiff complained of auditory and visual hallucinations; however, these conditions were not repeated to any other examining or treating physician elsewhere in the record.

- In October 2009, Dr. Vijaykumar Kulkarni, employed by Plaintiff's workers' compensation attorney, conducted an independent medical evaluation and found Plaintiff totally disabled. However, because Dr. Kulkarni provided very little evidence relied on in forming this opinion, the ALJ found it "quite conclusory." The ALJ also noted that Dr. Kulkarni failed to identify specific limitations that would render Plaintiff disabled.

Other opinions, as will be discussed, *infra* at 16, contain no specific functional assessment of claimant's abilities and were, therefore, not helpful to the ALJ's determination of Plaintiff's residual functional capacity; and where treating physicians rendered opinions that claimant was unable to work, the ALJ found no support in the medical record.

10

In sum, this Court agrees with the Magistrate Judge's finding that substantial evidence supports the conclusions reached by the ALJ and, in light of the vast medical evidence considered, it is clear the ALJ did not substitute her opinion for that of Plaintiff's treating physicians. Thus, these Objections lack merit and are overruled.

*Third Objection—Listings for Disability*

In his third Objection, Plaintiff contends that the Magistrate Judge erred by upholding the ALJ's conclusion that his mental impairments do not meet or medically equal the criteria for any listing for disability prior to September 23, 2011; that essentially the ALJ failed to fully indicate her reasons for such a determination, or for the "B" criteria for listings 12.04 (Affective Disorder) and 12.06 (Anxiety-Related Disorders). Contrary to this position, the Magistrate Judge acknowledged that the ALJ adequately explained her finding that Plaintiff failed to meet the criteria for any listings, including those for 12.04 and 12.06. The Magistrate Judge further elucidated that to satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.00A. For purposes of paragraph B, "marked" is defined to mean "more than moderate but less than extreme," and applies where "the degree of limitation is such as to interfere seriously with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis. 20 C.F.R. Pt. 404, Subpt. P. App. 1, Regs. no. 4, §12.00C.

In addition, a claimant has the burden of proving that his severe impairment or impairments meets the requirements of a listed impairment. *Caraballo v. Astrue*, 2012 WL 983579, at *8 (M.D. Pa. Mar. 22, 2012) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). To

do this, a claimant must show that all of the criteria for a listing are met. *Sullivan*, 493 U.S. at 530. An impairment that meets only some of the criteria for a listed impairment is not sufficient. *Id.* Thus, to qualify for benefits by showing that an impairment, or combination of impairments, is equivalent to a listed impairment, Plaintiff bears the burden of presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Id.* at 531.

Here, the ALJ explained that from January 1, 2002, through September 22, 2011, Plaintiff suffered only *mild* difficulties in activities of daily living, *moderate* difficulties in social functioning, and *moderate* limitations with regard to concentration, persistence, or pace, providing support from the record, as well as substantiating the weight given (or justified lack thereof) to the medical opinions that addressed Plaintiff's mental impairment. (R&R 24-25). For instance, the ALJ gave little weight to the opinion of Dr. Klahr, whose opinion was given in conjunction with a workers' compensation claim and who conducted no specific functional assessment of Plaintiff's disabilities; and to Dr. Wong, who also provided a workers' compensation narrative, and did not, according to the ALJ, demonstrate familiarity with the definition of "disability" contained in the Social Security Act and regulations. (R&R 25).

Based upon the evidence of record, this Court finds that the Magistrate Judge committed no error in upholding the ALJ's decision, which established that Plaintiff failed to meet or medically equal the criteria for any listing for mental disability prior to September 23, 2011. This Objection lacks merit and is overruled.

### *Fifth Objection—Date of Onset of Disability*

In his fifth Objection, Plaintiff asserts that the Magistrate Judge erred by adopting the ALJ's thorough evaluation of the record in determining the date of onset of disability, an argument also made in his Brief. (Brief 6, 8-20). Here, specifically, Plaintiff argues that the ALJ

"missed important evidence, and misinterpreted some evidence" and urges this Court to consider "other records" that establish ongoing progressive psychiatric treatment in evaluating whether there was substantial evidence to support the ALJ's determination.

Addressing Plaintiff's argument, the Magistrate Judge cited Social Security Ruling 83-20, which provides as follows:

> The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.
>
> \*   \*   \*
>
> In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing the [ALJ] should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

SSR 83-20, 1983 WL 31249 (Jan. 1, 1983).

Accordingly, an ALJ should call on a medical expert to determine the onset date when slowly progressive impairments are at issue, the alleged onset and date last worked are far in the past, and adequate medical records are not available. *Walton v. Halter*, 243 F.3d 703, 709-10 (3d Cir. 2001); *Jakubowski v. Comm'r of Soc. Sec.*, 215 F. App'x 104, 105 (3d Cir. 2007). However, the regulations do not require ALJs to seek outside expert assistance. *See* 20 C.F.R. §§404.1546(c), 404.1527(e); SSR 96-5p, 1996 WL 374183 (July 2, 1996); *Chandler*, 667 F.3d at 362. Curiously, while Plaintiff extensively argues this point in his Brief, *i.e.*, that the ALJ should have consulted a medical expert to determine the onset date of disability, the corresponding

Objection leaves it out, and only generalizes how the ALJ considered, or did not consider, the evidence.

This Court, having independently reviewed the ALJ's decision, agrees with the Magistrate Judge and finds that there were voluminous medical records available to, and considered by, the ALJ for determining Plaintiff's disability onset date, thereby presenting no need to resort to a medical expert to determine the onset date of disability. Further, the ALJ provided substantial support for the finding of said date, referencing numerous medical reports regarding Plaintiff's shoulder and arm pain, headaches, and depression; *to wit*: (1) with respect to Plaintiff's shoulder/arm pain, a December 2009 right shoulder x-ray, examinations conducted in July 2008 and March 2008, noting, respectively, greater range of motion and then worsening pain, but most likely due to Plaintiff's perception of pain; (2) with respect to Plaintiff's headaches, normal MRIs taken in 2005 and 2011, medical reports from September 2000, April 2002, March 2004, and June 2005, noting a recent hospitalization for intractable headaches, as well as reports from September 2011 and November 2011, noting that Plaintiff's headaches have caused a marked decrease in Plaintiff's ability to concentrate; (3) with respect to Plaintiff's depression, Dr. Sun started Plaintiff on Viibryd, as Plaintiff's treatment with Lexapro did not seem to help, and Dr. Sun believed that Plaintiff had reactive depression and that it was playing a role in Plaintiff's ongoing pain and other limitations; (4) with regard to activities of daily living prior to September 23, 2011, the ALJ found that Plaintiff had mild difficulties, taking into account that in February 2006, Plaintiff reported that he lived with and cared for his 8-year old daughter, cooked meals 3-4 times a week, did some cleaning, laundry and shopping, took care of personal hygiene needs, went on the internet and read newspapers; and in March 2010, Plaintiff reported that he lived with his girlfriend and her 2-year old child; and (5) as to maintaining social

functioning prior to September 23, 2011, the ALJ acknowledged that Plaintiff had moderate difficulties, such as: in November 2003, Plaintiff was noted to have nervousness, anger, worrying behavior, temper problems, stress and other interpersonal difficulties; paranoid ideation was denied in an August 2008 evaluation; and in March 2010, Plaintiff reported that he experienced mood swings, got violent and agitated at times, and experienced road rage.

In light of the above evidence, the ALJ acknowledged Plaintiff's difficulties did not rise to the level of "marked" difficulty, noting Plaintiff's ability to engage in activities of daily living, despite his behavioral and mental health concerns. This Court, thus, need not question the ALJ's determination of September 23, 2011, as the onset date of disability, finding that substantial evidence supports this determination. This Objection is overruled.

*Sixth Objection—Residual Functional Capacity*

In his sixth Objection, Plaintiff reiterates the argument made in his Brief that the ALJ erred in the assessment of his residual functional capacity for the period prior to September 23, 2011; likewise, the Magistrate Judge purportedly erred in agreeing with the ALJ. The ALJ found that prior to September 23, 2011, Plaintiff had the residual functional capacity to perform light work except with no sitting, standing or walking limitations; he could only lift and carry up to 20 pounds occasionally and ten pounds frequently with his non-dominant hand/arm, using it as an occasional assist; he could not engage in any overhead activity with either arm; he could engage in no repetitive pushing or pulling with either arm and could not climb ladders or ropes; he could only perform simple, repetitive work without assembly lines or teams, with minimal to no public contact. Plaintiff, however, contends that the residual functional capacity fails to address his psychomotor retardation, periods of isolation and anger, and behaviors of poor focus and communication.

Residual functional capacity is a function-by-function assessment based upon all of the relevant evidence; it represents what a claimant can still do despite his limitations. *See* 20 C.F.R. §404.1545(a)(1); *Martin v. Comm'r of Soc. Sec.*, 547 F. App'x 153, 160 (3d Cir. 2013). The final responsibility for determining a claimant's residual functioning capacity is reserved to the Commissioner, 20 C.F.R. §§404.1546(c), 416.946(c), and on such issues even "treating source opinions . . . are never entitled to controlling weight or special significance." *Breen v. Comm'r of Soc. Sec.*, 504 F. App'x 97, 99 (3d Cir. 2012) (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1006)); *see also Brown v. Astrue*, 649 F.3d 193, 197 n.2 (3d Cir. 2011) (the opinion of a treating physician does not bind the ALJ on the issue of functional capacity). Further, when an ALJ must consider all relevant evidence when determining an individual's residual functional capacity, it need not "make reference to every relevant treatment note in a case where the claimant . . . has voluminous medical records." *Martin*, 547 F. App'x at 160 (quoting *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001)).

As discussed in the analysis of Plaintiff's first, second, and fourth Objections, there was an ample amount of medical records for the ALJ to consider, including those used to determine Plaintiff's residual functional capacity prior to September 23, 2011. In early 2010, state agency consultants Dr. Gary Friedman and Dr. Jusino-Berrios prepared opinions relating to Plaintiff's physical and mental health impairments, respectively, which the ALJ used to determine, among other medical evidence considered, Plaintiff's residual functional capacity, as consistent with the medical evidence.

The other medical evidence considered by the ALJ included assessments of disability assigned by Dr. Donald Oh, who found Plaintiff had 15% psychiatric and 15% neurological disabilities in 1999; Plaintiff's treating physician, Dr. Philip Keats, who found Plaintiff 30%

disabled in 2004; Dr. Kulkarni, who found him 95% disabled in 2005; and Dr. Klahr, who performed an independent psychiatric evaluation in 2006 and found Plaintiff 20% disabled. The ALJ appropriately assigned little weight to these opinions, which were made in conjunction with Plaintiff's workers' compensation claim, emphasizing that they all deal with an issue reserved only to the Commissioner, the ultimate determination of disability, 20 C.F.R. §404.1527(e), and they contain no specific functional assessment of Plaintiff's physical or mental abilities and, therefore, are of little help in determining residual functional capacity.

In addition, the opinion of Dr. Wong that concluded in 2005 that Plaintiff's orthopedic, neurological, and psychiatric difficulties rendered him 100% disabled, was afforded little weight by the ALJ because, as stated, the issue of whether a claimant is disabled is reserved for the Commissioner. Further, as a non-treating physician, it was not clear to the ALJ that Dr. Wong was familiar with the definition of "disability" contained in the Social Security Act and regulations. Lastly, the ALJ determined that the opinion of Plaintiff's treating physician, Dr. Robert Friedman, who determined that Plaintiff was unable to work, was not supported by the medical records. In 2002, a physical exam showed only marked tenderness and weakness as to Plaintiff's right shoulder, otherwise good passive range of motion, and other areas were noted within normal limits.

In light of all that was carefully considered by the ALJ, *i.e.*, lack of recent evidence of limitations with respect to Plaintiff's ankle impairment, documented evidence with respect to his shoulder/arm impairments, and a questionable history of headaches, the ALJ made an appropriate determination of Plaintiff's residual functional capacity prior to September 23, 2011. Further, the ALJ did not fail to take into account Plaintiff's reported psychomotor retardation, periods of isolation and anger, and behaviors of poor focus and communication in ultimately

limiting Plaintiff to simple, repetitive work without mandated teams or assembly lines, and with minimal to no public contact. This Court accepts the Magistrate Judge's recommendation to uphold the ALJ on this issue and Plaintiff's Objection is overruled.

### *Seventh Objection—Jobs Cited*

Finally, in his seventh Objection, Plaintiff argues that the Magistrate Judge did not fully address the Plaintiff's arguments with respect to the jobs cited by the vocational expert, commensurate with step five of the sequential evaluation. Specifically, Plaintiff acknowledges his disagreement with the ALJ's determination of the residual functional capacity prior to September 23, 2011, and further asserts that the jobs cited are inappropriate for his limitations.

As noted by the Magistrate Judge, an ALJ is required to consult with a vocational expert to determine the extent of the erosion of the occupational base if a claimant's residual functional capacity does not coincide with the definition of the defined exertional range of work. SSR 83-12, 1983 WL 31253 (Jan. 1, 1983). In other words, a vocational expert's assistance may be needed when a claimant's particular limitations do not fall neatly within one level or another of capacity. *Henderson v. Soc. Sec. Admin.*, 87 F. App'x 248, 251 (3d Cir. 2004). Here, as stated, the ALJ determined that Plaintiff could perform light work, as defined in 20 C.F.R. §§404.1567(b) and 416.967(b), but that such ability was impeded by additional limitations, such as no sitting, standing or walking limitations; he could only lift and carry up to 20 pounds occasionally and ten pounds frequently with his non-dominant hand/arm, using it as an occasional assist; he could not engage in any overhead activity with either arm; he could engage in no repetitive pushing or pulling with either arm and could not climb ladders or ropes; he could only perform simple, repetitive work without assembly lines or teams, with minimal to no public contact.

Accordingly, the ALJ asked the vocational expert whether, with the above noted limitations, jobs exist in the national economy for someone of Plaintiff's age, education, work experience, and residual functional capacity. An ALJ need only include in the hypothetical question functional limitations that are supported by the record. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2006) (citing *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence.") (citations omitted) (emphasis added)). The vocational expert cited to such jobs as warehouse checker (Dictionary of Occupational Titles ("DOT") 222.687-010), visual inspector (DOT 559.687-074), hand packager (DOT 920.685-025), automatic grinding machine operator (DOT 690.685-194), and surveillance system monitor (DOT 379.367-010), as jobs in the national economy that Plaintiff could perform. (Tr. 28-29).

While Plaintiff raises the argument that the above DOT jobs identified are inappropriate based on the determined residual functional capacity, the Magistrate Judge characterized his argument as one essentially claiming that the medical records do not support a finding that Plaintiff can perform the jobs cited by the vocational expert, which, in turn, is a reiterated argument that the medical records do not support the ALJ's residual functional capacity finding. *See Rutherford*, 399 F.3d at 554 n.8 (noting attack on ALJ's hypothetical question is generally attack on ALJ's residual functional capacity assessment). The Magistrate Judge concluded that the ALJ's residual functional capacity assessment is not in contradiction with the DOT definitions of the jobs cited by the vocational expert. This Court agrees with the Magistrate Judge's conclusion and further agrees that the ALJ satisfied her affirmative duty to inquire about

conflicts between vocational expert testimony and the DOT. SSR 00-4p, 2000 WL 189704 (Dec. 4, 2000); *Rutherford*, 399 F.3d at 556.

Given that the Magistrate Judge meticulously reviewed the ALJ's five-step sequential evaluation, found substantial evidence via medical opinions and records to support the ALJ's determination through step four, resulting in the residual functional capacity, and acknowledged that the ALJ comported with the Social Security Rulings governing development of the record and reliance upon a vocational expert's opinion in step five, this Court finds that the Magistrate Judge fully addressed Plaintiff's argument on this point.

## CONCLUSION

For the reasons stated herein, and upon review of the evidence of record, Plaintiff's Brief, and the R&R, this Court finds that Plaintiff's Objections merely raise arguments already presented to the Magistrate Judge, who provided a thorough and comprehensive review of Plaintiff's issues. Consequently, Plaintiff's Objections are overruled, the R&R is approved and adopted in whole, and Plaintiff's *request for review* is denied. An Order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.